IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH HALL, an individual,

    Plaintiff,

 v.

THE CITY OF PORTLAND, a municipal corporation; and EDWARD TEVIS WHEELER, an individual,

    Defendants.

No. 3:22-cv-00074-HZ

OPINION & ORDER

Jacob Johnstun
Johnstun Injury Law LLC
1935 St. Helens St., Ste. A
St. Helens, OR 97051

 Attorney for Plaintiff

Caroline Turco
William W. Manlove
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204

 Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Joseph Hall brings this action under 42 U.S.C. § 1983 alleging violation of his rights under the Fourteenth Amendment of the U.S. Constitution against the City of Portland and Mayor Edward Tevis "Ted" Wheeler.[1] Defendants move to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Court grants Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff alleges that on May 6, 2021, protests occurred in various areas of Portland, Oregon, and that protesters systematically blocked traffic, openly carried firearms, destroyed public and private property, and physically assaulted people passing by. Compl. ¶¶ 10–11, ECF 1. Plaintiff was driving home from work at around 1:00 PM and did not know the demonstrations were taking place. Compl. ¶ 13. At an intersection on his route home, Plaintiff's pickup truck was blocked by a group of protesters, and he was forced to stop. Compl. ¶¶ 13–14. He rolled down the window to signify to the protesters which direction he was headed, and he alleges that the protesters shouted slurs and pointed their firearms at him. Compl. ¶ 15. Plaintiff warned the protestors that he would draw his own weapon for protection. Compl. ¶ 16. After a brief standoff, the protesters temporarily moved out of Plaintiff's path so he could continue. Compl. ¶ 16.

But after driving several feet, Plaintiff stopped because believed something had struck the rear of his pickup truck. Compl. ¶ 17. He left his vehicle running while he exited to see what had happened. Compl. ¶ 17. After confirming that nothing had hit his truck, he returned to the

---

[1] Plaintiff also brings claims under 42 U.S.C. § 1985 and 42 U.S.C. § 1986, which he voluntarily dismisses. Pl. Resp. Def. Mot. Dismiss ("Pl. Resp.") 13, ECF 11.

driver's side door to find that his keys had been taken from the ignition. Compl. ¶ 18. Plaintiff alleges he was trapped with nowhere to go, and that several people were pointing firearms at him. Compl. ¶ 19. He then drew his concealed handgun and was subsequently tackled to the ground and assaulted by the protesters. Compl. ¶ 20. Plaintiff alleges he suffered severe injuries, including multiple rib fractures, a collapsed lung, a collapsed vertebra, a fractured left clavicle, and cuts and abrasions. Compl. ¶ 25.

Plaintiff's claim rests on the assertion that Defendants' decision to "decline to enforce public safety laws during Portland's ongoing demonstrations" was the cause of his injury. Compl. ¶ 2. Plaintiff claims that Mayor Wheeler and the City maintained a "strategy to limit police intervention in protests and demonstrations and broadcast their intention to not intervene in advance. Compl. ¶ 3. To show that the City was aware of a "substantial risk of physical harm that would probably result" from ongoing protests, Plaintiff specifically references a press conference on August 6, 2020, when Mayor Wheeler and Portland Police Bureau ("PPB") Chief Chuck Lovell denounced the violence and warned that the city anticipated more violence in the immediate future. Compl. ¶ 3. Plaintiff argues that Defendants' "dereliction of public duty [to protect him] caused the violation of [his] substantive due process rights." Compl. ¶ 24.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

### I. Substantive Due Process

Plaintiff asserts that Defendants' failure to protect him from being assaulted by protesters violated his substantive due process rights under the Fourteenth Amendment. Defendants move to dismiss Plaintiff's Complaint for failure to state a claim. Defendants assert that because there is no constitutional right to protection by the state, they cannot be held liable for Plaintiff's injuries.

The Due Process Clause of the Fourteenth Amendment provides, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1. A "touchstone" of due process has been articulated as "protect[ing] . . . the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis*, 523 U.S.

833, 845 (1998). The Supreme Court's cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in a constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992)). For a plaintiff to prevail on a substantive due process claim, they must establish that government actors engaged in official conduct that "shocks the conscience." *Id.* If the State defendant has time for deliberation, their actions meet the "shocks the conscience" standard if the defendant acted with "deliberate indifference." *Id.* at 851. By contrast, if the defendant does not have time for deliberation, the standard is met only if the defendant acted with a purpose to harm the plaintiff unrelated to any legitimate, governmental purpose. *Id.* at 853; *see Porter v. Osborn,* 546 F.3d 1131, 1137 (9th Cir. 2008) (determining that the "shocks the conscience" standard requires the "more demanding showing [of] a purpose to harm [the plaintiff] unrelated to legitimate law enforcement objectives.").

      **A.**      **No Constitutional Right to Protection by the State**

Plaintiff argues that Defendants violated his constitutional rights by failing in their duty to protect him from being assaulted by protesters. He alleges Defendants failed to protect the constitutional rights of people within the city's boundaries by allowing demonstrators to "openly assault citizens"; conspiring to create and employ a policy of inaction; emboldening lawbreaking demonstrators; announcing an intent to withhold meaningful police presence; encouraging the "city-wide mayhem" by demonstrating alongside protesters; and publicly voicing tolerance toward unlawful activity. Compl. ¶ 23. Plaintiff claims Defendants' "dereliction of public duty caused the violation of [his] substantive due process rights." Compl. ¶ 24.

The Fourteenth Amendment Due Process Clause does not "impose an affirmative obligation on the State"; rather, it is interpreted as a "limitation on the State's power to act, not as

a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). In other words, the State is generally not liable for its omissions. *Martinez v. City of Clovis*, 943 F.3d 1260, 1271(9th Cir. 2019) . "The Fourteenth Amendment typically does not impose a duty on the state to protect individuals from third parties." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). The Fourteenth Amendment "did not create a system by which police departments are . . . held financially accountable for crimes that better policing might have prevented." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768–69 (2005).

There are two exceptions to the general rule that the Due Process Clause does not expose the State to liability for acts of violence by private third parties. First, a special relationship between the plaintiff and the State, such as a custodial relationship, may give rise to a constitutional duty to protect. *DeShaney*, 489 U.S. at 198–200. Second, under the state-created danger exception, the State may have a duty to protect a plaintiff if the State "affirmatively places [them] in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 971 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). Plaintiff does not allege a special relationship between him and Defendants, so the first exception does not apply. His claim falls under the second exception: that Defendants' policing choices affirmatively exposed Plaintiff to a known or obvious danger, and that Defendants acted with deliberate indifference. *See* Compl. ¶¶ 3–4.

### B. The State-Created Danger Exception

The State's failure to protect an individual against acts of third parties may violate due process where state action "affirmatively places the plaintiff in a position of danger." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). To make a successful claim under the

state-created danger exception, a plaintiff must establish three elements. *See Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). First, the plaintiff must show that the defendant's affirmative actions created or exposed the plaintiff to a "known or actual danger" that they "would not otherwise have faced." *Kennedy*, 439 F.3d at 1061. Second, the plaintiff must establish that the injury they suffered was foreseeable. *Martinez*, 943 F.3d at 1271. Finally, the plaintiff must establish that the defendant was "deliberately indifferent toward the known danger." *Id.*

       i.    Affirmative Acts

The relevant inquiry for the affirmative act element is whether the state action "create[s] or expos[es] individuals to a danger they otherwise would not have faced." *Kennedy*, 439 F.3d at 1062. The danger must be "actual" and "particularized," and courts consider "whether the officers left the person in a situation that was more dangerous than the one in which they found [them]." *Martinez*, 943 F.3d at 1271 (citation omitted). The Ninth Circuit has only found a due process violation in cases in which the defendant had contact with the victim or the third party who injured them, and that contact placed the victim in harm's way. *See, e.g.*, *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000); *Penilla v. City of Huntington Park*, 115 F.3d 707, 708 (9th Cir. 1997); *Wood v. Ostrander*, 879 F.2d 583, 586 (9th Cir. 1989).

In *Munger*, the police escorted a visibly intoxicated man out of a bar into sub-zero temperatures. *Munger*, 227 F.3d at 1084. The police prohibited him from driving or returning to the bar, and they watched as he wandered off alone toward a railyard. *Id.* The next morning, his body was found just two blocks away. *Id.* at 1085. The court found that the officers had violated his substantive due process rights because they had left him in a more dangerous situation than he would have encountered had the officers not intervened. *Id.* In addition, the fact that the

officers searched for the man after he wandered away demonstrated that they were aware of the danger they created for him. *Id*. at 1086.

Similarly, in *Penilla*, police officers engaged in an affirmative act by placing the plaintiff in a more dangerous position than when they found him. *Penilla*, 115 F.3d at 708. After responding to a 911 call and finding the plaintiff lying on the porch, the officers canceled a request his neighbors had made for paramedics, broke open the front door, and dragged the plaintiff into his own home, shutting and locking the door. *Id.* The next day, he was found dead in his home. *Id*. As in *Munger*, the court found that the series of affirmative acts by police placed the plaintiff at a higher risk of medical harm than he would have been in had they not intervened in the first place. *Id*. at 710.

Finally, in *Wood*, a police officer pulled over a car and, after determining that the driver was intoxicated, ordered the car to be impounded. *Wood*, 879 F.2d at 586. The officer left a female passenger stranded alone at night in a high-crime area. *Id*. The woman began walking home and was offered a ride by an unknown man, who took her to a secluded area and raped her. *Id*. By leaving the woman alone in an area the officer knew to be dangerous, he had exposed her to an actual and particularized danger to which, but for his intervention, she would not have been exposed. *Id*. at 588. The court found that although the officer himself did not assault the woman, "he [] acted in callous disregard for [her] physical security, a liberty interest protected by the Constitution." *Id*. at 589.

In *Munger*, *Penilla*, and *Wood*, actions taken by police officers exposed the plaintiffs to known or actual dangers. In each case, the officers had contact with the plaintiff, and from that contact, took a series of affirmative actions that placed the plaintiff in a situation that was more dangerous than the one in which the police had found them. Because officers took actions that

were specific toward each plaintiff, the actions were "actual" and "particularized," fulfilling the requirement for an affirmative act that the plaintiff, distinguished from the public at large, face a special danger. *Martinez v. State of California*, 444 U.S. 277, 285 (1980).

*Hernandez v. City of San Jose* provides an example more analogous to this case. 897 F.3d at 1129. That case involved a clash between protesters and attendees of a rally for then-presidential candidate Donald J. Trump. *Id*. at 1129–30. The Ninth Circuit found that the police acted affirmatively to increase the danger to the plaintiffs by "(1) actively preventing the attendees from leaving safely though alternative exits, (2) directed the attendees to leave from a single exit, and (3) required the attendees to turn north . . . into a crowd of violent anti-Trump protesters." *Id.* at 1134 (internal quotations and brackets omitted). The attacks by protestors on attendees of rally were a mere "possibility" when the event started, but "the Officers greatly increased that risk of violence when they shepherded and directed the Attendees towards the unruly mob waiting outside." *Id*. The court held that the danger to the plaintiffs was actual and particularized, because officers had witnessed violence against the plaintiffs earlier in the rally, and officers had received reports that there had been attacks on the Trump supporters by anti-Trump protesters. *Id.*

In contrast to *Hernandez*, in *Johnson v. City of Seattle*, the Ninth Circuit held that with the discretionary crowd control measures taken by the police did not constitute affirmative acts. 474 F.3d 634 (9th Cir. 2007). In *Johnson*, an assistant police chief made a tactical decision against ordering officers to enter a crowd during an unruly Mardi Gras celebration because "any attempts by the police to disperse it would incite greater panic and violence, making the situation worse." *Id*. at 637. As the crowd activity grew more dangerous, the Seattle Police Department maintained its strategy to refrain from intervening. *Id*. Several individuals who were assaulted

and injured by members of the crowd sued the City. *Id.* The court determined that the plaintiffs failed to offer evidence that the police had engaged in an affirmative act that exposed the plaintiffs to danger in violation of their substantive due process rights. *Id.* at 641. The police department's decision to switch to a more passive crowd control approach did not "place [the plaintiffs] in any worse position than they would have been in had the police not come up with any operational plan whatsoever." *Id.* at 641.

The actions of Defendants here are closer to those of the officers in *Johnson* than to those in *Hernandez* because none of Plaintiff's allegations show that Defendants affirmatively created an actual, particularized danger that he would not have otherwise faced. Defendants did not have direct contact with Plaintiff and did not affirmatively steer him toward a certain crowd of protesters. Plaintiff does not allege that police were present when he was assaulted.[2] Plaintiff also does not allege that the police had any contact with his attackers on the day of his attack. Thus, Plaintiff was no more than a member of the "public at large," and any danger posed by police action (or inaction) was not directed specifically at him. *See Martinez v. State of California*, 444 U.S. at 285 ("[T]he parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger."). Plaintiff alleges no actions by Defendants directed towards him that placed him in a worse position than if Defendants had not acted at all.

Even if there were a "policy of inaction" in place, a policy or decision found to be less effective in hindsight is still not an affirmative act. *Johnson*, 474 F.3d at 641. "[E]ven if proved not the most effective means to combat the violent conduct of private parties, the more passive

---

[2] The Complaint is vague in its description of police activity when Plaintiff was attacked. Plaintiff generally alleges that in response to protesters becoming violent on the day he was attacked: "911 calls were placed for PPB to intervene. Yet, due to defendants' policy of inaction, PPB failed to respond in any meaningful manner." Compl. ¶ 12. Plaintiff does not allege that police were aware of violence against him or were present when he was attacked.

10 – OPINION & ORDER

plan the police ultimately implemented . . . 'placed the [plaintiffs] in no worse position than that in which they would have been had the Defendants not acted at all.'" *Id.* (quoting *DeShaney*, 489 U.S. at 201). Thus, even an ineffective tactical or operational decision by law enforcement—including one that fosters violence at protests—does not violate substantive due process if the action does not affirmatively place a plaintiff in any greater danger than they would have been in without intervention.

Here, because there was no contact between Plaintiff and Defendants or their agents to create an actual or particularized danger, and because any decision made by Defendants was discretionary, Defendants did not engage in an affirmative act as required for the state-created danger exception to apply. Plaintiff claims that Defendants "embolden[ed] lawbreaking demonstrators by habitually choosing to not disturb unlawful assemblies," "announc[ed] an intent to withhold meaningful police presence in advance of demonstrations," and "publicly voic[ed] tolerance and understanding toward lawbreaking demonstrators." Compl. ¶¶ 23 (c), (d), (f). But Plaintiff does not explain how Defendants' announced policy of inaction, as he alleges, qualifies as affirmative conduct that created a particularized danger for him. *See DeMaria v. Washington Cnty.*, 12 F. Supp. 2d 1093, 1099-1100 (D. Idaho 1996), *aff'd*, 129 F.3d 125 (9th Cir. 1997) ("In every case where an officer stands by and does nothing, a claim could be raised that the officer's inaction emboldened the criminal. But *DeShaney* has clearly foreclosed these claims.").

Plaintiff argues that his claims are similar to those successfully brought by plaintiffs in two out-of-circuit cases. In *Dwares v. City of New York*, the Second Circuit found that the plaintiff had stated a claim that police officers violated his constitutional rights when they gave prior assurances to a group of skinheads that they would not intervene if the skinheads attacked a

protestor who burned an American flag. 985 F.2d 94, 96-97 (2d Cir. 1993). And in *Estate of Rosenbaum v. City of New York*, the district court found that plaintiffs had stated that "their due process rights were violated by the City's alleged implementation of a policy of restraint." 975 F. Supp. 206, 216 (E.D.N.Y. 1997). But in those cases, alleged direct communication between police and private actors emboldened the violent activity against plaintiffs because the police had reassured the private actors that they would not intervene.

Here, Plaintiff does not allege that Defendants gave his specific attackers any prior assurances that their actions would be tolerated. Even taken as true, Mayor Wheeler's statements "announcing an intent to withhold meaningful police presence in advance of demonstrations" are different from the direct assurances suggested in *Dwares* and *Rosenbaum* because in those cases, the plaintiffs alleged specific assurances given to specific protesters, whereas Mayor Wheeler's comments were directed more generally to the community at large. Compl. ¶ 23 (d). Mayor Wheeler's statements are more like the actions of the police department in *Johnson*, where a passive policing strategy provided no direct assurances to protesters and did not leave the plaintiffs in a worse position than they otherwise would have found themselves. *See Johnson*, 474 F.3d at 641. Accordingly, Plaintiff fails to allege sufficient facts to establish that Defendants engaged in an affirmative act as required to satisfy the first element of the state-created danger exception.

    ii.  Foreseeability

Even if Defendants had engaged in an affirmative act that placed Plaintiff in danger, the injury to Plaintiff was not a foreseeable result of the alleged action. For the state-created danger exception to apply, a plaintiff must show that their "ultimate injury" was foreseeable. *Martinez v. City of Clovis*, 943 F.3d at 1273. Defendants need not have foreseen the exact injury suffered by

the plaintiff; rather, "the state actor is liable for creating the foreseeable danger of injury given the particular circumstances." *Id.* at 1273–74. In addition, the foreseeable danger must fall within the original risk affirmatively created by the state actor. *Id.*

A state actor can be held liable if they create conditions that foreseeably result in injury to the plaintiff. For example, in *L.W. v. Grubbs*, it was foreseeable that a female nurse would be attacked by a prisoner because the nurse's supervisors assigned her to work with the prisoner despite knowing that he had a history of "unrepentant violence against women," that she would be left alone with him and he would assault her if she was, and that she was unprepared to defend herself against an attack. 974 F.2d 119, 121 (9th Cir. 1992), *cert. denied sub nom. Grubbs v. L.W.,* 508 U.S. 951 (1993). The court held that the nurse had stated a claim that her substantive due process rights were violated because within these circumstances, the state had affirmatively created the dangerous conditions from which it was foreseeable that the nurse would be attacked by the inmate. *Id.* In *Wood*, on top of the officer's affirmative act that created the danger to the plaintiff, it was foreseeable that the female passenger was at risk of being sexually assaulted when the officer left her alone in a high crime area without a way to get home. *Wood*, 879 F.2d at 588.

But a state actor cannot be held liable for a third party's actions if the injury to the plaintiff is "too remote a consequence of the [state actor's] action to hold them responsible[.]" *Martinez v. State of California*, 444 U.S. at 285. In *Martinez*, a teenage girl was murdered by a parolee five months after he was released from a state mental hospital. *Id.* at 279. Although the state was "fully informed about his history, his propensities, and the likelihood that he would commit another violent crime," the Supreme Court held that the murder committed by the parolee could not be "fairly characterized as state action." *Id.* at 279, 285. Because there was no

13 – OPINION & ORDER

indication that the victim faced any specifically particularized danger, and because she was murdered five months after the parolee's release, the Court determined that her injury was too attenuated from the state's decision to release her murderer to be foreseeable. *Id.* at 285.

Here, Defendants' alleged "overt policy of inaction" is too attenuated from Plaintiff's injury to reasonably fall within the scope of an affirmative act by Defendants, such that the injury would have been foreseeable. The only specific action by Defendants that Plaintiff alleges is a statement Mayor Wheeler made at a press conference nine months before Plaintiff's injury. Plaintiff's injury is too remote in time from Mayor Wheeler's statement. Even if Plaintiff alleges Defendants' "action of inaction" was ongoing at the time of his attack, the particular danger to him was no more significant or foreseeable than the danger posed to any other person in the City. Plaintiff's formulation of foreseeability is too broad; there is no evidence that Defendants could foresee any greater risk to Plaintiff than to the general public. Because Defendants had no contact with Plaintiff and made no assurances to his attackers, Defendants did not place Plaintiff in a situation from which it was foreseeable that Plaintiff would be injured. Thus, Plaintiff fails to allege sufficient facts to satisfy the second element of the state-created danger exception.

   iii.  Deliberate Indifference

Finally, even if Defendants acted affirmatively, they could not have acted with deliberate indifference because the injury to Plaintiff was not foreseeable. A plaintiff must show that the defendant was deliberately indifferent to the "known or obvious danger" facing them for the state-created danger exception to apply. *Hernandez,* 897 F.3d at 1133. This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action." *Id.* at 1135 (citations omitted). Deliberate indifference requires a "culpable mental state," higher than even gross negligence. *Id.* Thus, to claim deliberate

indifference, a plaintiff must allege facts showing that the defendant "recognize[d] [an] unreasonable risk and actually intend[ed] to expose the plaintiff to such risks without regard to the consequences." *Id.* "In other words, the state actor must have known that something *is* going to happen but ignored the risk and exposed the plaintiff to it anyway." *Id.* (internal quotations and citations omitted). The Ninth Circuit has reiterated that for state-created danger claims, the deliberate indifference standard is "purely subjective." *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1160–61 (9th Cir. 2021).

      To satisfy the deliberate indifference element, a plaintiff must show that the state actor recognized and subsequently ignored a risk of harm to the plaintiff. For example, in reversing the district court's grant of summary judgment for the defendant police officer, the court in *Wood* held that a jury could find that the officer knew of the danger to which he exposed the plaintiff because of crime reports and his knowledge of the area in which he abandoned her. 879 F.2d at 590. Similarly, in *Kennedy v. City of Ridgefield*, a police officer knew of the plaintiff's neighbor's violent tendencies because the plaintiff told him of past incidents of violence and repeated her concerns about her family's safety. 439 F.3d at 1064. After the neighbor shot her and fatally shot her husband, the plaintiff sued the City for violating her substantive due process rights under the state-created danger exception. *Id.* at 1062. The court held that by notifying the neighbor of the allegations the plaintiff had made against him, despite his promise to the plaintiff to the contrary, the officer demonstrated a deliberate indifference toward the plaintiff's safety: "[o]f all the possible actions he could take . . . he took the one most feared by Kennedy." *Id.* at 1065.

      The police officers in *Hernandez* demonstrated even greater indifference because the officers were witnessing the violence firsthand. 897 F.3d at 1129. The officers knew that past

Trump rallies had turned violent and had received reports of violence early that day. *Id.* at 1138. By choosing to block off exits and direct people towards the mob, the officers acted with deliberate indifference to the safety of the protesters because they had immediate knowledge of the violence and exposed the plaintiffs to it anyway. *Id*. at 1136.

On the other hand, in *Patel v. Kent School District*, the court found that a teacher was not deliberately indifferent when she allowed a developmentally disabled student to use the bathroom alone, where the student engaged in sexual conduct with another developmentally disabled student. 648 F.3d at 976. Because the teacher did not know of any "immediate" risk, she lacked the requisite culpable state of mind to establish deliberate indifference. *Id.* The teacher did not intentionally expose the student to a known or obvious danger. *Id.*

Defendants here did not know of a specific risk to Plaintiff that they subsequently chose to ignore. At the August 2020 press conference, nine months before Plaintiff's injuries, Mayor Wheeler and Police Chief Chuck Lovell warned of potential unlawfulness at future protests in the city. While their statements reveal some acknowledgment of possible violence at protests, neither their statements nor their actions expressed an *intent* to expose Plaintiff to that risk. And Plaintiff does not allege that police were present at the protest when he was attacked and specifically chose not to intervene. Thus, Plaintiff cannot establish that Defendants consciously disregarded any consequences of a known or obvious danger to him.

Plaintiff argues that his allegations of Defendants' awareness that some protests in Portland in the summer of 2020 had become unruly show that Defendants were deliberately indifferent to a risk that he would be attacked by protesters. The Court disagrees. To meet the stringent standard for deliberate indifference, Plaintiff must allege facts showing that Defendants were subjectively aware that Plaintiff was at risk of injury on May 6, 2021, the day that he was

16 – OPINION & ORDER

allegedly attacked, and that Defendants intended to expose him to that risk. Defendants' generalized awareness that some protests could become violent does not meet the "stringent standard of fault" required for deliberate indifference. Plaintiff has not sufficiently alleged deliberate indifference on the part of Defendants to support liability for a due process violation under the state-created danger exception.

Because Plaintiff does not sufficiently allege facts showing that Defendants created the danger which caused his injuries, his substantive due process claim fails. Neither the City nor Mayor Wheeler violated Plaintiff's constitutional rights by failing to protect him from the independent actions of third-party protesters.

**II.**     ***Monell* Liability**

A municipality cannot be held liable under § 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690–91 (1978). Liability can only attach if the municipality itself causes the constitutional violation, either through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may be fairly said to represent official policy." *Id.; see City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). The Ninth Circuit premises this liability upon (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedures of the local government entity"; (3) the act of an official whose acts "fairly represent official policy such that the challenged actions constitute[] official policy"; or (4) where an official with "final policy making authority delegated that authority to, or ratified the decision, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

17 – OPINION & ORDER

Plaintiff correctly asserts that Mayor Wheeler has final policy-making authority for the City. However, because Plaintiff fails to adequately allege a constitutional violation, there can be no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). As a result, Plaintiff's claim against the City fails under *Monell*.

## CONCLUSION

Construing all alleged facts in Plaintiff's Complaint as true, the Court finds that Plaintiff fails to adequately state a claim upon which relief may be granted. Defendant's Motion to Dismiss is GRANTED [9].

IT IS SO ORDERED.

DATED: \_\_\_\_August 22, 2022\_\_\_\_.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

18 – OPINION & ORDER